[referred to Docket Items 40, 45 & 47]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, | Civil Action No. 06-1488 (JBS) |
| Plaintiff, | |
| v. | **OPINION** |
| DiTOCCO KONSTRUCTION, INC., et al., | |
| Defendants. | |

APPEARANCES

A. Richard Bailey, Esq.
COZEN & O'CONNOR, P.C.
1900 Market Street
Philadelphia, PA 19103-3508
    Attorney for Plaintiff Argonaut Great Central Insurance
    Company

Jay A. Gebauer, Esq.
POST & SCHELL, P.C.
Overlook Center 2nd Floor
100 Overlook Drive
Princeton, NJ 08540
    Attorney for DiTocco Konstruction, Inc.

Linton W. Turner, Jr., Esq.
CRAWSHAW, MAYFIELD, TURNER, O'MARA, DONNELLY & McBRIDE
2201 Route 38, Suite 300
Cherry Hill, NJ 08002
    Attorney for Ronald G. Maise, d/b/a Gloucester County
    Plumbing

Michael J. Revness, Esq.
KURTZ & REVNESS, P.C.
1265 Drummers Lane
Suite 209
Wayne, PA 19087
    Attorney for John Suggs, d/b/a JMS Services

**SIMANDLE,** District Judge:

This matter arises out of a fire that occurred at a T.G.I. Friday's restaurant in Turnersville, New Jersey in 2005.  In short, Plaintiff Argonaut Great Central Insurance Co., as alleged subrogee for the owners of the T.G.I. Friday's, brings negligence and breach of warranty claims against DiTocco Konstruction, Inc., John Suggs (d/b/a JMS Services) and Ronald G. Maise (d/b/a Gloucester County Plumbing) (collectively, the "Defendants"). Defendants now individually move for summary judgment [Docket Item Nos. 40, 45 and 47] on the grounds that Argonaut's insureds, the owners of the T.G.I. Friday's, had previously waived any subrogation rights they had against the Defendants.  The central issue in this case is whether the waiver of the subrogation clause present in the construction contract between the owners of the T.G.I. Friday's and the Defendants applies to post-construction losses.  For the reasons expressed below, the Court holds that the waiver does apply to post-construction losses. Therefore, the Court will grant the Defendants' motions for summary judgment.

I.   **BACKGROUND**

   A.   **The 1999-2000 Renovation of the T.G.I. Friday's Restaurant**

This matter involves a T.G.I. Friday's restaurant located on Route 42 in Turnersville, New Jersey.  The restaurant is owned by

two entities: Brick Township Pubs, Inc. and Northeast Concepts, Inc. (collectively, the "Owners").  In August, 1999, Brick Township Pubs, Inc. entered into an agreement with a construction company named Design Kontractors, Inc. to renovate and remodel the restaurant.  The agreement between the parties governing the construction of the restaurant is called Standard Form of Agreement between Owner and Contractor, AIA Document A101-1997 (the "Construction Contract").  Defendant DiTocco Konstruction, Inc. actually performed the renovation and remodeling work contemplated in the Construction Contract, serving as general contractor for the restaurant renovation project.  Defendants Ronald G. Maiese (d/b/a Gloucester County Plumbing) and John Suggs (d/b/a JMS Services) served as subcontractors on the project.

According to the Affidavit of Thomas H. DiGiorgio (president of DiTocco Konstruction, Inc.), although the original Construction Contract was executed by Design Kontractors, Inc., the job was completely re-bid due to a change order and construction did not actually begin until February 19, 2000. (DiTocco Konstruction Reply Br. at Ex. A, Affidavit of Thomas H. DiGiorgio ¶ 7.)  The parties disagree on the relationship between Design Kontractors, Inc. and DiTocco Konstruction, Inc. According to Plaintiff, DiTocco Konstruction, Inc. and Design Kontractors, Inc. are separate companies.  According to DiTocco

3

Konstruction, Design Kontractors, Inc. was merged into DiTocco Konstruction, Inc. in February of 2000 (with DiTocco Konstruction as the surviving entity).  This was accomplished upon the filing of Articles of Merger with the Secretary of State in Florida in 2000, prior to the start of construction.  (Articles of Merger of Design Kontractors, Inc. into DiTocco Construction, Inc.) Pursuant to the merger, DiTocco Konstruction assumed all rights and liabilities under the Construction Contract.  (DiGiorgio Aff. ¶¶ 5-7.)  Thus, at the time construction began, Design Kontractors and DiTocco Konstruction were fully merged and the surviving entity was DiTocco Konstruction.

**B.   The Standard Form of Agreement between Owner and Contractor, AIA Document A101-1997**

The Construction Contract, Standard Form AIA Document A101-1997, incorporates by reference a document titled General Conditions of the Contract for Construction known as AIA Document A201-1991 (the "General Conditions").  The General Conditions includes a waiver of subrogation provision (Section 11.4.7) which states:

> The Owner and Contractor waive all rights against (1)
> each other and any of their subcontractors, sub-
> subcontractors, agents and employees . . . for damages
> caused by fire, or other causes of loss to the extent
> covered by property insurance obtained pursuant to this
> paragraph 11.4 or other property insurance applicable
> to the Work, . . . A waiver of subrogation shall be
> effective as to a person or entity even though that
> person or entity would otherwise have a duty of
> indemnification, contractual or otherwise, did not pay
> the insurance premium directly or indirectly, and

whether or not the person or entity had an insurable
interest in the property damaged.

General Conditions § 11.4.7.  "Work" is defined as "the
construction and services required by the Contract Documents,
whether completed or partially completed, and includes all other
labor, materials, equipment and services provided or to be
provided . . . ."  General Conditions § 1.1.3.

The General Conditions also contains a subrogation
continuation clause for damages suffered after Work is completed.
The clause states, in pertinent part:

> If . . . after final payment property insurance is to
> be provided on the completed Project through a policy
> or policies other than those insuring the Project
> during the construction period, the Owner shall waive
> all rights in accordance with the terms of Section
> 11.4.7 for damages caused by fire or other causes of
> loss covered by this separate property insurance.  All
> separate policies shall provide this waiver of
> subrogation by endorsement or otherwise.

General Conditions § 11.4.5.  The meaning of this subrogation
continuation clause is at the heart of this dispute.

### C.   The Fire at the T.G.I. Friday's Restaurant

On February 15, 2005, almost five years after the project
was completed, a fire destroyed the restaurant and all of the
equipment inside.  According to the Gloucester County Fire
Marshal's report, heat from the restaurant's kitchen broiler
ignited an accumulation of grease inside the wall behind the
broiler.  The fire occurred, according to the fire marshal's
report, because DiTocco Konstruction and its subcontractors

5

negligently installed a broiler and broiler table directly against a combustible wood wall in the kitchen of the restaurant and the contractors failed to seal cut-outs in the wall made in order to run natural gas lines to the broiler.  Because the cut-outs were unsealed, grease was permitted to accumulate inside the wall.

At the time of the fire, Argonaut Great Central Insurance Co. ("Plaintiff") insured the premises and business property located therein through a policy issued to the Owners.[1]  After the Owners made claims upon the policy, Plaintiff paid them $3,224,290.99 to repair and replace the damaged property and for lost profit and extra expenses incurred as a result of the fire.

D.  **Procedural History**

Plaintiff, as alleged subrogee, filed a six-count Complaint on March 30, 2006 alleging claims against DiTocco Konstruction, Inc., Gloucester County Plumbing and JMS Services for negligence and breach of warranty.  Defendant DiTocco Konstruction moved for summary judgment, [Docket Item No. 40], followed by Defendants JMS Services and Gloucester County Plumbing.  [Docket Item Nos.

---

[1]  In 2004, Brick Township Pubs, Inc. and Northeast Concepts purchased a commercial property insurance policy from Plaintiff Argonaut which insured the restaurant property from October 1, 2004 to October 1, 2005.

45, 47.]  Briefing was completed and the Court heard oral

argument on the motions on August 9, 2007.[2]

      **II.  STANDARD OF REVIEW**

      Summary judgment is appropriate when the materials of record

"show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of

law."[3]  Fed. R. Civ. P. 56(c).  In deciding whether there is a

disputed issue of material fact, the court must view the evidence

in favor of the non-moving party by extending any reasonable

favorable inference to that party; in other words, "the nonmoving

party's evidence 'is to be believed, and all justifiable

inferences are to be drawn in [that party's] favor.'"  Hunt v.

---

    [2]  While the motions for summary judgment were pending
before the Court, all Defendants, individually, filed motions for
leave to file an amended answer and additional affirmative
defenses. [Docket Item Nos. 44, 46, 49.]  Specifically, each
Defendant sought to amend their answer to add the affirmative
defense of waiver of subrogation rights.  These three motions
relate to the three motions for summary judgment because, in
opposition to the Defendants' motions for summary judgment,
Plaintiff argues that Defendants have waived the right to assert
an affirmative defense of waiver.  These three motions were
granted by Magistrate Judge Donio on August 8, 2007 and all three
Defendants filed amended answers between August 9 and 13 that
included the affirmative defense of waiver of subrogation rights.
[Docket Item Nos. 64, 65, & 69.]

    [3]  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  See id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  See id.

Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[4] Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

## III. **DISCUSSION**

Although each Defendant -- DiTocco Konstruction, JMS Services, and Gloucester County Plumbing -- filed its own motion for summary judgment and brief in support of that motion, each Defendant makes the same two arguments in support of its motion. First, Defendants argue that Plaintiff's claims against them are barred by a contractual waiver of subrogation contained in the Construction Contract between the Owners and Design Kontractors, Inc.  Second, the Defendants argue that this waiver of subrogation is applicable and enforceable in the context of post-construction damage, meaning that it is applicable in the present situation.[5]  The Court will address each argument.

---

[4]   The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Gepner, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

[5]   Defendants JMS Services and Gloucester County Plumbing also argued that waiver of the subrogation provision in the Construction Contract precludes a subrogation claim by Plaintiff

## A.    Waiver of Subrogation Rights

According to Defendants, the entire basis for Plaintiff's claims is subrogation of its insureds, the Owners of the restaurant.  Defendants argue that, under the plain meaning of the General Conditions (which is a document incorporated by reference by the Construction Contract), the Owners are precluded from asserting subrogation claims against either the general contractor or any subcontractor.  Indeed, the Construction Contract reads that "the Owners and Contractor waive all [subrogation] rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees . . . for damages caused by fire or other causes of loss to the extent covered by property insurance . . . or other property insurance applicable to the Work . . . ."  General Conditions at § 11.4.7.  Thus, according to Defendants, this clear and unambiguous language must be enforced as written and consequently, summary judgment should be granted in favor of Defendants.

In asserting its subrogation claims against Defendants, Plaintiff (as alleged subrogee) is, in effect, "stepping into the shoes" of the insured, the Owners of the T.G.I. Friday's.  As a

---

not only against DiTocco Konstruction, but against the subcontractors, JMS Services and Gloucester County Plumbing.  At oral argument, Plaintiff conceded as much, stating that if the Court rules that DiTocco Konstruction (the general contractor) has the benefit of the waiver of subrogation, JMS Services and Gloucester County Plumbing (the subcontractors) do as well.

subrogee, then, Plaintiff has no more rights than those of its insureds.  See Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 560 (1981); Commercial Union Ins. Co. v. Bituminous Cas. Corp., 851 F.2d 98, 100 (3d Cir. 1988).  In addition, subrogation waiver clauses in construction contracts are recognized and enforceable under New Jersey law.  See Sch. Alliance Ins. Fund v. Fama Constr. Co., 353 N.J. Super. 131 (Law Div. 1988), aff'd 353 N.J. Super. 1 (App. Div. 2002) (holding that the purpose of waivers of subrogation is to place the risk of loss on the insurer regardless of the relative fault of the parties)[6]; Commercial Union Ins. Co., 851 F.2d at 101.  Moreover, the additional purpose of such a waiver of subrogation is to prevent a windfall to insurers at the expense of contractors, where insurers presumably have considered the risk of loss in establishing premiums and, in such cases, "the insurer should not have the ability to recoup that loss by subrogation against the other parties allegedly causing the loss."  Id.

---

[6]  In Sch. Alliance Ins. Fund, a property owner's insurer, acting as the owner's subrogee, brought an action against the construction manager, general contractor and subcontractors to recover money spent for cleanup, removal and rebuilding of walls. See 353 N.J. Super. at 134.  In holding that the insurer had no subrogation right against either the general contractor or the subcontractor, the New Jersey court found that the purpose behind the mutual waiver of subrogation was "to assure that, to the extent any loss is covered by a policy [of insurance], the insurer should bear the risk of loss, regardless of any fault on the part of one or both of the parties." Id. at 140.

Thus, it follows that if the subrogation clause in the General Conditions applies to post-construction losses (as discussed in Section III.B, <u>infra</u>), Plaintiff will be contractually barred from bringing this subrogation action, as next discussed.[7]

---

[7] Plaintiff argues that DiTocco Konstruction cannot use the terms and conditions of the Construction Contract (or General Conditions) as the basis for a motion for summary judgment because the Construction Contract was between Brick Township Pubs, Inc. and Design Kontractors, Inc. (not DiTocco Konstruction).  According to Plaintiff, the Construction Contract does not reference the interest of DiTocco Konstruction.

Plaintiff contends that, under New Jersey law, a contract is not binding upon non-signatories to the contract.  <u>See</u> <u>Comley v. First Camden Nat'l Bank</u>, 36 A.2d 591, 593 (N.J. Super. Ct. 1944) (an action on a contract cannot be maintained against a person who is not a party to it).  Indeed, according to Plaintiff, a waiver of subrogation is an exculpatory agreement, a release which, like any contract under New Jersey law, can only bind the individuals who signed it.  <u>See</u> <u>Gershon v. Regency Diving Ctr., Inc.</u>, 368 N.J. Super. 237, 246 (App. Div. 2004).  Because the only signatories to the Construction Contract are Brick Township Pubs and Design Kontractors, Inc., no other party (including DiTocco Konstruction) can rely on the contract for a defense.  At best, according to Plaintiff, there is a genuine issue of material fact regarding whether Plaintiff's subrogation claims against DiTocco Konstruction and its subcontractors are barred by the waiver of subrogation provision in the Construction Contract because there are factual issues regarding DK's contention that Design Kontractors is now DiTocco Konstruction.

The Court disagrees and finds that DiTocco Konstruction does have standing to raise the waiver of subrogation in the Construction Contract (and General Condition) as a defense because on February 11, 2000 Design Kontractors, Inc. was merged with DiTocco Konstruction with DiTocco Konstruction being the surviving entity.  According to the articles of merger, DiTocco Konstruction assumed all rights and liabilities under the Construction Contract.  Moreover, under New Jersey law, after a merger of two companies takes place, the surviving corporation possess all the rights, privileges and immunities of each of the

**B.    Whether the Waiver of Subrogation Applies to Post-Construction Damage**

**1.    The Parties' Positions**

The more complex issue here is whether the waiver of subrogation contained in the General Condition applies to post-construction losses, as is the case here.  Defendants argue (and Plaintiff agrees) that neither state nor federal courts in New Jersey have addressed the issue of subrogation waivers involving post-construction losses.  In support of their position that the subrogation waiver in the Construction Contract covers the loss at issue in this case, Defendants make a number of arguments. First, Defendants argue that the plain language of the Construction Contract states that the waiver of subrogation applies to post-construction damages.  Defendants' interpretation of the plain language of the Construction Contract, according to Defendants, is buttressed by the commentary to the Construction Contract which states that the waiver of subrogation in Section 11.4.5 extends to other policies of insurance that a property owner may purchase.  Second, Defendants cite numerous cases from other jurisdictions in which courts, when presented with claims arising from post-construction damage, have granted summary judgment on behalf of contractors and subcontractors based upon

_____

merging corporations.  See N.J. Stat. Ann. 14A:10-6(e). Consequently, DiTocco Konstruction is entitled to use the waiver of subrogation in the Construction Contract in defense of this action.

waiver of subrogation language virtually identical to the Construction Contract.  See Midwestern Indem. Co. v. Sys. Builders, Inc., 801 N.E. 2d 661, 669 (Ind. Ct. App. 2004); Royal Surplus Lines Ins. Co. v. Weis Builders, Inc., 2006 U.S. Dist. LEXIS 16316, *3 (W.D. Ky. 2006); Town of Silverton v. Phoenix Heat Source System, Inc., 948 P.2d 9, 13 (Colo. Ct. App. 1997); Colonial Properties Realty L.P. v. Lowder Constr. Co., Ins., 256 Ga. App. 106 (Ga. Ct. App. 2002).

    Plaintiff argues that the waiver of subrogation in the Construction Contract does not bar Plaintiff's claims against Defendants because the waiver of subrogation only applies to losses that occurred during the construction project and the fire at issue occurred almost five years after the construction of the building was completed.  Indeed, the "Work" contemplated in the contract was substantially completed in May, 2000 and the fire occurred well after the Work was completed and the final payment made.  According to Plaintiff, the case law cited by Defendants in support of their position (1) is readily distinguishable from the present case (see School Alliance Ins. Fund, 353 N.J. Super. at 1), or (2) should not be followed by this Court in light of a more recent case on point from the U.S. District Court for the District of Massachusetts, namely, Lumbermens Mut. Cas. Co. v. Grinnell Corp., 477 F. Supp. 2d 327 (D. Mass. 2007) (Gorton, J.).

First, Plaintiff argues that this Court is not bound by the holding of School Alliance Ins. Fund, because the case is distinguishable from the facts of the present case. School Alliance Ins. Fund, according to Plaintiff, stands for the well-settled proposition that waivers of subrogation bar builder's risk insurers from pursuing subrogation claims against contractors for property damages that occur during the construction project. See 353 N.J. Super. at 140. Plaintiff argues that this case is distinguishable because the defendant did not seek waiver of subrogation based on post-construction losses.

Next, Plaintiff argues that this Court should not extend the waiver of subrogation to post-construction losses as the courts in Silverton, Colonial Properties Realities, L.P., and Midwestern Indem. Co. did. Rather, Plaintiff urges this Court to follow the holding of the District of Massachusetts in Lumbermens, in which the court analyzed the waiver language in the AIA 201-1997 General Conditions, Silverton, Colonial Properties Realities, L.P., and Midwestern Indem. Co., and determined that the AIA waiver of subrogation does not extend to post-construction losses. Lumbermens, 477 F. Supp. 3d at 331. Plaintiff highlights three points raised in Lumbermens that are also applicable in this case:

First, the Silverton court relied on the fact that the
parties agreed to extend the same insurance policy that was in
effect during the construction project and, along with it, the
related waiver of subrogation rights.  Specifically, Judge Gorton
held that:

> The same insurance policy (in Silverton) provided
> coverage for the town hall from construction to the
> fire [nearly a year and one-half after construction
> ended]. Silverton is, however, distinguishable from the
> instant case because the parties here did not agree to
> extend an existing insurance policy.  Rather, the
> policy covering the construction period terminated on
> the date of the last payment and the plaintiff
> subsequently purchased a separate, post construction
> policy. [Thus] Silverton does not . . . stand for the
> proposition that a waiver of subrogation rights
> automatically extends to a separate policy purchased
> after final payment on the project.

Lumbermens, 477 F. Supp. 2d at 331-32.  Plaintiff argues that the
same distinction exists here, as the Owners added the restaurant
to their commercial policy after substantial completion of the
construction project and final payment was made.  Second,
Plaintiff argues that this Court, like the court in Lumbermens,
should reject the argument put forth by Defendants that § 11.4.5
applies to post-construction losses.  According to Plaintiff, the
words "to be provided" indicate that § 11.4.5 applies only to a
situation in which the parties agree, in advance, that post-
construction property insurance will be provided by the Owner --
not to cases such as this where the parties did not contemplate
such a policy as part of the construction contract.  See

15

Lumbermens, 477 F. Supp. 2d at 331.  Finally, Plaintiff argues,
as the Court held in Lumbermens, that the primary policy
justification for enforcing a waiver of subrogation is to prevent
protracted disputes during the course of the construction
project.  According to Plaintiffs (and the court in Lumbermens),
the same policy justifications are not implicated after the
construction is completed.

### 2.  Analysis

As it must, this Court's analysis of whether the waiver of
subrogation rights extends to post-construction losses begins
with the Court interpreting the contracts at issue in this case
(the Construction Contract (AIA A101-1997) and the General
Conditions (AIA A201-1997)).[8]  Under New Jersey law, "when

---

[8]  As a preliminary matter and addressing an issue raised by
Plaintiff at oral argument, the Court finds that the parties are
bound by the terms and conditions of the General Conditions
(A201-1997) as well as by the terms of the Construction Contract.
This is because the Construction Contract (A101-1997) signed by
both parties incorporates by reference the General Conditions.
The fact that the terms of the General Conditions are
incorporated is highlighted in several places in the Construction
Contract.  First, the first page of the Construction Contract
states that "AIA Document A201-1997, General Conditions of the
Contract for Construction, is adopted in this document by
reference."  Second, Article 1 of the Construction Contract,
states that the "Contract Documents" that bind the parties
consist of "this Agreement, Conditions of the Contract (General,
Supplemental and other Conditions), Drawings, Specifications,
[and] Addenda issued prior to execution . . . ."  Finally,
Article 7.1 of the Construction Contract states that "[w]here
reference is made in this Agreement to a provision of AIA
Document A201-1997 . . . the reference refers to that provision
as amended or supplemented by other provision of the Contract
Documents."  Thus, the terms and conditions contained in the

interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." <u>Colliers Lanard & Axilbund v. Lloyds of London</u>, 458 F.3d 231, 236 (3d Cir. 2006) (quoting <u>NAV-ITS, Inc. v. Selective Ins. Co. of Am.</u>, 183 N.J. 110, 118 (2005)). "When the terms of the contract are clear and unambiguous, the Court is without power to do anything but enforce those  terms."  <u>Harbour Cove Marine Servs. v. Rabinowitz</u>, 2005 U.S. Dist. LEXIS 36794, *8-9 (D.N.J. 2005); <u>see also</u> <u>Mellon Bank, N.A. v. Aetna Business Credit, Inc.</u>, 619 F.2d 1001, 1009 (3d Cir. 1980) ("Courts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent.")

Here, the Court finds that the language of Section 11.4.5 of the General Conditions is unambiguous and clearly extends the waiver of subrogation to post-construction losses suffered by the Owners.  The Court's interpretation of the General Conditions starts with the fact that the General Conditions contains a waiver of subrogation clause.  Specifically, Section 11.4.7 of the General Conditions states:

> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees . . . for damages caused by fire, or other causes of loss to the extent covered by property insurance obtained pursuant to this paragraph 11.4 or other property insurance applicable to the Work, . . . A waiver of subrogation shall be

General Conditions apply to this dispute.

17

effective as to a person or entity even though that
person or entity would otherwise have a duty of
indemnification, contractual or otherwise, did not pay
the insurance premium directly or indirectly, and
whether or not the person or entity had an insurable
interest in the property damaged.

General Conditions § 11.4.7.  From this language, it is clear

that the Owner waives all subrogation rights against all the

Defendants.  The Court, however, must interpret Section 11.4.5 in

order to determine whether this waiver of subrogation applies to

post-construction losses.  Section 11.4.5 states:

If during the Project construction period the Owner
insures properties . . . at or adjacent to the site by
property insurance under policies separate from those
insuring the Project, **or if after final payment
property insurance is to be provided** on the completed
Project through a policy or policies other than those
insuring the Project during the construction period,
the Owner shall waive all rights in accordance with the
terms of Section 11.4.7 for damages caused by fire or
other causes of loss covered by this separate property
insurance.  **All separate policies shall provide this
waiver of subrogation by endorsement or otherwise.**

General Conditions § 11.4.5 (emphasis added).

The Court interprets this language in Section 11.4.5 (that

states that "a policy or policies other than those insuring the

Project during the Construction period") as contemplating that

the Owners may obtain a different policy in order to insure the

property after the completion of construction.  This clause makes

clear that the parties contemplated that the Owners would acquire

additional insurance (possibly but not necessarily through the

same insurer) and that the waiver of subrogation contained in the

General Conditions would apply to those additional policies.  In fact, the Court is hard-pressed to determine a purpose for this clause other than to extend the waiver of subrogation to additional insurance policies after construction has been completed.  The Court finds that the clause "if . . . property insurance is to be provided" does not suggest, as Plaintiff argues, that the waiver is only applicable if the insurer that provided insurance during construction also provides property insurance to the Owner after the construction.  Indeed, the language does not say that "only in the event that the same policy is extended" will the waiver of subrogation apply.  Rather, the General Conditions is a form contract that must fit a variety of circumstances, including a situation where the Owner self-insures.  This clause merely triggers the applicability of the waiver.

In addition, the final sentence of Section 11.4.5, which states that "[a]ll separate polices shall provide this waiver of subrogation by endorsement or otherwise," leads the Court to conclude that the General Conditions contemplated that a new property insurer would be made aware of the Owner's waiver of subrogation, thus applying to post-construction losses when a new insurer would take over.  Absent such an interpretation, it is difficult to imagine the purpose of the final sentence of Section 11.4.5.

The Court's interpretation that the waiver of subrogation applies to post-construction loss is consistent with both the Commentary prepared by the American Institute of Architects (AIA) with respect to the General Conditions and numerous other courts that have interpreted Section 11.4.5.  To be sure, the Commentary prepared by the AIA states that Section 11.4.5:

> extends the provision of waiver of subrogation to other **property insurance** the owner **may** purchase.  Such policies may cover property at or adjacent to the project site, or they **may replace** the property insurance that was in effect on the work during construction.

(AIA Commentary at 86.)  Thus, the Commentary instructs that the waiver of subrogation applies to property insurance the Owner may purchase (rather than is required by agreement to subsequently purchase) and that the waiver extends to property insurance that replaces the policy in place during construction (rather than an extension of the same policy already in place).  <u>Id.</u>  The Court's interpretation is consistent with the Indiana Court of Appeals, which, in <u>Midwestern Indem. Co.</u>, held that "[b]ecause property insurance applicable to the work . . . may remain in effect after the final completion date, so too may a waiver of subrogation rights . . . remain in effect" and that the subrogation waiver was not destroyed simply because the insured purchased a different insurance policy for post-construction liabilities.  801 N.E. 2d at 668-69.  Moreover, in <u>Silverton</u>, 948 P.2d at 11-13, the Colorado Court of Appeals held that the waiver of

20

subrogation in the General Conditions (Form AIA A201-1997)
applied to an insured who suffered fire damage to its roof
approximately 18 months after it was installed.  In this case,
General Conditions contains virtually the same waiver of
subrogation and subrogation continuation language that was found
enforceable in <u>Silverton</u> and <u>Midwestern</u>.  Additional support for
the Court's interpretation is found in <u>Royal Surplus Lines Ins.</u>
<u>Co.,</u> 2006 U.S. Dist. LEXIS 16316, *3, in which the court
discussed changes the parties had made to the language in the
standard AIA Form A101-1997 and A201-1997 and held that:

> The parties intentionally chose not to include AIA-A111
> sections 11.4.5 and 11.4.7, which clearly extend the
> waiver beyond completion of the contract if property
> insurance is obtained on the completed Project, in the
> Contract.

<u>Id.</u>

In interpreting Sections 11.4.5 and 11.4.7 so that the
waiver of subrogation applies to post-construction losses, the
Court will not follow the decision in <u>Lumbermens</u> as Plaintiff
advocates.  The Court finds that the district court's analysis in
<u>Lumbermens</u> would not be appropriate under New Jersey law.
Indeed, in <u>Lumbermens</u>, which was not decided under New Jersey
law, the court began its analysis of this issue by reviewing how
other courts had interpreted Sections 11.4.5 and 11.4.7, moving
on to an analysis of the parties' intentions and the policy
reasons behind a waiver of subrogation clause.  In contrast, New

21

Jersey law requires that a Court first interpret the contract and surmise its plain meaning. See Colliers Lanard & Axilbund, 458 F.3d at 236. Only if the Court concludes that the contract language is ambiguous does the Court look to the intent of the parties or policy or fairness issues. Having interpreted the plain language of the General Conditions as applying the waiver of subrogation to post-construction losses, the Court need not address issues raised by the Plaintiff such as the Plaintiff's intent in entering into the Construction Contract.

## VI. CONCLUSION

For the reasons expressed in this Opinion, the Court finds that the waiver of subrogation contained in the General Conditions is applicable to post-construction losses. Therefore, Plaintiff's claims are contractually barred. Consequently, the Court will grant Defendants' Motions for Summary Judgment.

The accompanying Order will be entered.


**December 21, 2007**          **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                              U.S. District Court


22